UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 CORTEZ BLAKE,
D-2 KARAMOH TURNER,
D-3 SEMAJ AYERS,
D-4 MAIJAH GREENE,
D-5 SHATONNIA KIMBROUGH,
D-6 ARMOND WILLIAMS, and
D-7 NASIR LEWIS,
Defendant.

Case No. 22-20519
Honorable Laurie J. Michelson

**ORDER DENYING MOTIONS TO SUPPRESS [205,207]**

Defendants are alleged to have participated in a kidnapping conspiracy that took place on or about November 14, 2021, through on or about November 15, 2021, following the carjacking of Cortez Blake. (ECF No. 106.) The First Superseding Indictment further alleges that the object of the conspiracy was to kidnap and hold the victim against her will to: (1) obtain information from her about the carjacking and (2) retaliate against her for the belief that she was also involved in the carjacking. (*Id.*) The government has produced substantial discovery, including photographs, communications, and other information from the Defendants' social media accounts. This information was gathered, in large measure, from the execution of six search warrants: (1) January 26, 2022, state-court warrant to obtain information from Blake's Instagram account from October 1, 2021, through January 25, 2022 (ECF No.

206-2, Exhibit B (sealed)); (2) March 4, 2022, state warrant to obtain information from Blake's Instagram account from January 25, 2022, through March 3, 2022 (ECF No. 206-3, Exhibit C (sealed)); (3) April 7, 2022, federal warrant to obtain information pertaining to "possession of a firearm by a convicted felon" and "possession of a firearm by a drug user or addict" from six Instagram accounts, including those of Blake, Ayers, Williams, and Turner (and Turner's brother Ramone Turner and another non-defendant) (ECF No. 206-5, Exhibit E (sealed)); (4 and 5) August 4, 2022, two federal warrants focused on the November 15, 2021, carjacking and alleged kidnapping: one to obtain information from Google accounts for Ayers and Williams, (ECF No. 206-8, Exhibit H (sealed)), and another to obtain information from Meta for 17 Instagrams accounts, including those of Blake, Ayers, Williams, and Lewis (ECF No. 206-9, Exhibit I (sealed)); and (6) October 14, 2022, federal warrant "to correct 3 of the 17 accounts (from the August 4, 2022 search warrant) that had slight spelling errors, and therefore could not be processed by Meta." (ECF No. 206-10, Exhibit J (sealed).) None of the three corrected accounts pertain to a named defendant.

The Defendants filed two motions to suppress the evidence gathered from these warrants: one by Defendant Nasir Lewis (ECF No. 205) and one by Defendant Karamoh Turner (ECF N. 207). Lewis' motion is joined by Defendants Armond Williams, Maijah Greene, Cortez Blake, and Semaj Ayers, and Turner's motion is joined by Defendants Greene, Blake, and Ayers. The essence of the motions is that the warrants are overly broad and lack probable cause, and that the evidence seized is fruit of the poisonous tree. The Court held a hearing on May 3, 2024.

For the reasons stated more fully on the record in the Court's oral ruling, the Defendants' motions to suppress are DENIED. The Court summarizes its key findings as follows:

**Fourth Amendment Standing**

- Since "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted," *Rakas v. Illinois*, 439 U.S. 128, 133-34, (1978) (quotation omitted), "[i]t follows that 'suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing.'" *United States v. Williams,* 354 F.3d 497, 510-511 (6th Cir. 2003) (quoting *United States v. Padilla*, 508 U.S. 77, 81-82 (1993)).
- Thus, only certain Defendants have Fourth Amendment standing to challenge certain warrants. *See Hicks v. Scott*, 958 F.3d 421, 431 (6th Cir. 2020) (noting that to establish that police violated his Fourth Amendment rights, a defendant must show that he had "a 'legitimate expectation of privacy'" in the place that was searched (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 (1978))).
- Here, the Court finds that Defendants have a reasonable expectation of privacy in the parts of their Instagram and Facebook accounts that they kept private from the public. *See United States v. Zelaya-Veliz*, 94 F.4th 321, 333–334 (4th Cir. 2024) citing *United States v. Bledsoe*, 630 F. Supp. 3d 1, 18 (D.D.C. 2022) (finding the "weight of persuasive authority hold[s] that non-public content

held on social media accounts is protected under the Fourth Amendment") and *United States v. Chavez*, 423 F. Supp. 3d 194, 201–205 (W.D.N.C. 2019) (finding "As with sealed packages and private phone calls, it is objectively reasonable for an individual to expect privacy in non-public content that is entrusted to a social media website as the intermediary of the ultimate recipient," and noting, "To be sure, the ultimate recipient of such content may share it with law enforcement, as the Fourth Amendment does not 'protect[] a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.' But here, the Government obtained the information from Facebook—the intermediary—not from the recipient").

- But Defendants have not established that they have a reasonable expectation of privacy in the private parts of their co-defendants' (or non-defendants') social media accounts—including in group chat conversations they may have personally engaged in but that were acquired from a search of another individual's account. *See e.g.*, *United States v. Lustyik*, 57 F. Supp. 3d 213, 223 (S.D.N.Y. 2014) (finding that "[a] person has no expectation of privacy in another person's email account." (internal citation omitted)); *see also United States v. Almaleh*, 2022 U.S. Dist. LEXIS 35260, *34–35 (S.D.N.Y. 2022) ("Because [Defendant] lacks standing to challenge the search of [another's] email account, the Court denies his motion to suppress all evidence obtained pursuant to the email warrant).

- Thus, the moving and joining defendants (Lewis, Turner, Ayers, Williams, and Blake) can challenge only the warrants that pertain to their own social media accounts—not warrants pertaining to the social media accounts of their co-defendants or non-defendants.
- So Blake alone has standing to challenge the two state warrants; Blake, Ayers, Williams, and Turner have standing to challenge the April 7, 2022, federal warrant; Ayers and Williams have standing to challenge the first August 4, 2022, federal warrant, and Blake, Ayers, Williams, and Lewis have standing to challenge the second August 4, 2022, federal warrant.
- Because Blake is the only defendant with standing to challenge the two state warrants, the other Defendants' cannot complain about the use of this information, even assuming it was used, to secure the federal warrants. And thus, these other Defendants cannot argue that the social media evidence gathered from the federal warrants is fruit of the poisonous tree . *See United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014) (noting that "evidence taken in violation of one defendant's Fourth Amendment rights, and thus inadmissible against him, [is] nonetheless admissible against a co-defendant, whose rights had not been violated."); *United States v. Williams,* 354 F.3d 497, 510-511 (6th Cir. 2003) ("This Court has twice held that *Wong Sun* precludes the argument that a defendant is entitled to the suppression of evidence simply because it is the fruit of a violation of his co-defendant's Fourth Amendment rights.")

- The Court notes that even if it suppressed the evidence from the state warrants, this would not affect the case against the defendants or the trial. As addressed during the hearing, it is the expectation of the Court that the government will not be introducing in its case-in-chief any evidence recovered from the state-court warrants.

**<u>Probable Cause</u>**

- Blake challenges the existence of probable cause to support the two state warrants for his Instagram account, and Turner, Blake, Ayers, and Williams, challenge the existence of probable cause for the April 17, 2022, federal warrant.
- The Fourth Amendment requires that warrants be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A warrant is valid when the supporting affidavit provides a "substantial basis" for the issuing magistrate to believe "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Supreme Court has repeatedly emphasized that "[p]robable cause 'is not a high bar'" to clear. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "A magistrate judge's determination of probable cause supporting a warrant is entitled to "great deference." *Id*. at 236.

- The Court agrees with defendants that the evidence of probable cause in the search warrant affidavits for the state warrants and the April 7, 2022, federal warrant is sparse. The affidavit for the first state warrant, relying on Blake's felony status and a single Instagram photo of what appears to be a firearm with its serial number covered, stated that the requested information would help in the investigation of Blake for gun offenses and in his apprehension due to outstanding warrants for his arrest. (ECF No. 205-2, PageID.1258.) The second state warrant was virtually identical to the first, but it expanded the scope of the criminal conduct being investigated to include crimes involving "fraud, narcotics sales, and the theft of vehicles," without any specific information or evidence of Blake's commission of said crimes. (ECF No. 205-3, PageID.1262.)
- As mentioned, the April 7, 2022, federal warrant sought information from several of the Defendants' social media accounts to secure evidence of the offenses of felon in possession of a firearm in violation of 18 U.S.C. § 922 (g)(1) and possession of a firearm by a drug user or addict in violation of 18 U.S.C. § 922(g)(3); *see also United States v. Bowens*, 938 F.3d 790, 793 (6th Cir. 2019) ("Under that statute, 'the government must prove. . . that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm.'"(quoting *United States v. Burchard*, 580 F.3d 341, 350 (6th Cir. 2009))). (ECF No. 206-5.)

- As to Blake, who has a prior felony conviction, the affiant stated that he viewed three photos of what he believed to be Glock pistols and an AK-style firearm, with their serial numbers hidden, posted on Blake's Instagram stories. (*Id.*) This included a photo of a gun on someone's lap. (*Id.*) The photos were included in the affidavit and are consistent with the descriptions provided.
- As to Turner, who argues the affidavit provides insufficient evidence that "he was a regular and repeat user of marijuana," (ECF No. 207, PageID.1503), the affidavit includes a photograph from his Instagram where he is smoking something. (ECF 206-5, PageID.1324.) The affidavit states that "Turner is observed smoking a suspected marijuana blunt." (*Id.*) Turner's position is that it could just as likely be a cigar. In two other photos, posted on Turner's brother's Instagram account, Turner is observed standing with a group of other individuals, and appears to be holding a firearm. (*Id.* at PageID.25.) The affidavit states that Turner "is observed possessing firearms and smoking suspected marijuana," but it is again not entirely clear from the photos that Turner is smoking anything, let alone marijuana. (*Id.*)
- Similar limited evidence was provided to support the averments that Ayers and Williams' social media accounts would contain evidence of possession of a firearm by a regular drug user.
- With respect to Ayers, the affidavit referenced an August 15, 2020, conversation he had with an inmate at the Wayne County Jail where Ayers "admitted to being so 'high' that he could not recognize someone he knew" (ECF

No. 206-5, PageID.1315), and a February 7, 2022, photo that shows another individual smoking what the affiant believed to be a marijuana blunt (*id.* at PageID.1312–1313). While Ayers' Instagram account was tagged in the photo, the photo is not of Ayers. (*Id.*)

- As for Williams, the evidence of his repeated drug use includes two photos posted to his Instagram, one from July 2020 and one from May 2021, where he is observed holding a suspected AR-15 firearm and smoking what the affiant believed to be marijuana. (*Id.* at PageID.1321–22.) The second photo had the caption "we smoke that dope back to back got me floating." (*Id.* at PageID.1321.(cleaned up)).

**<u>Overbreadth</u>**

- Defendants also challenge the warrants as overly broad, arguing that they are all "general warrants" lacking in any particularity and all authorized the collection of the entire set of Instagram records. (ECF No. 205, PageID.1240.) The Fourth Amendment requires that a search warrant must "particularly describe" where law enforcement may search and the things they may seize. *United States v. Castro*, 881 F.3d 961, 964 (6th Cir. 2018). "A warrant . . . satisfies the particularity requirement if its text constrains the search to evidence of a specific crime." *Id.* at 965 (citing *Andresen v. Maryland*, 427 U.S. 463, 480–81 (1976)).

- With respect to the state warrants, the affidavit in support of the first could be read as being limited to seeking information about the offense of felon-in-possession of a firearm. (*See* ECF No. 206-2, PageID.1257–1258; ECF No. 206-3, PageID.1261–1262.) The second warrant identified specific additional offenses of "fraud, narcotics sales, and the theft of vehicles." (ECF No. 206-3, PageID.1262.) And both warrants were limited to narrow time frames.
- Similarly, the April 7, 2022, federal warrant was limited to the crimes of felon in possession and possession of a firearm by drug user for a narrow time frame. (ECF No. 206-5.) The other federal warrants were limited to information about the alleged November 14, 2021, kidnapping. (ECF Nos. 206-8, 206-9, 206-10.)
- As the Government states, "[t]hese were not limitless general warrants. The search warrants sought only Instagram/Google account records for specific persons covering a specific period of time for evidence of specific crimes." (ECF No. 237, PageID.1662.)

**Good Faith Exception**

- Ultimately, however, the Court does not need to decide whether the warrants were overbroad or the supporting affidavits lacked probable cause, because even if so, the good faith exception to the exclusionary rule applies here.
- The Supreme Court has long recognized that the exclusionary rule does not apply when the evidence at issue was "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984); *see United States v. Christian*, 925 F.3d 305,

312 (6th Cir. 2019) (en banc). After all, the "error in such a case rests with the issuing magistrate [judge]." *Davis v. United States*, 564 U.S. 229, 239 (2011). And "punishing the errors of judges is not the office of the exclusionary rule." *Id.* (citation omitted and cleaned up). Indeed, the exclusionary rule was created to deter unlawful police activity—not "innocent police conduct." *Id.* at 240. Courts suppress evidence that is obtained in violation of binding precedent because "[r]esponsible law enforcement officers will take care to learn 'what is required of them . . .  and will conform their conduct to these rules.'" *Id.* Thus "[t]he relevant question is whether the officer reasonably believed that the warrant was properly issued, not whether probable cause existed in fact." *United States v. Hython*, 443 F.3d 480, 487 (6th Cir. 2006).

- *Leon*, however, outlined a few circumstances in which an officer's reliance would not be objectively reasonable, including where the affidavit was "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 905). "[T]o avoid the bare-bones designation," an affidavit need only "establish a 'minimally sufficient nexus between the illegal activity and the place to be searched.'" *United States v. Christian*, 925 F.3d 305, 313 (6th Cir. 2019) (en banc) (quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016)).

- The lengthy affidavit in support of the April 7, 2022, warrant, as well as those supporting the subsequent federal warrants, surpass this low bar. (*See* ECF Nos. 206-5, 206-8, 206-9, 206-10.)
- The affidavit in support of the April 7, 2022, warrant described the Defendants' alleged gang activity, discussed how Facebook/Instagram is used as a communication tool between gang members, described the Defendants' gun possession and drug use (however limited), attached corroborating photos from Defendants' social media accounts, and explained the affiant's experience relevant to identifying firearms and drugs. (*See* ECF No. 206-5.) The affidavit also summarized the law on possession of a firearm by a regular drug user such that the magistrate judge could evaluate the proffered facts against this law. (*See, e.g., id.* at PageID.1297.)
- Thus, the warrant laid out the affiant's training and experience, the facts that he believed supported probable cause to believe the social media accounts at issue would contain evidence of certain firearm offenses, and, in particular, what the law required to show possession of a firearm by a regular drug user. Equipped with this information, the magistrate judge issued the warrant. In these circumstances, the Court cannot find that the officers did not act in good faith reliance on the issuance of this warrant. Indeed, whether the warrant lacked probable cause "'is not an open and shut matter; it is a close enough question' that executing officers reasonably could have believed the warrant

was valid." *See Chavez*, 423 F. Supp. 3d at 208 (quoting *United States v. Blake*, 868 F.3d 960, 975 (11th Cir. 2017)).

- The two state warrants are not as detailed as the federal warrants, but they do provide corroborating photo evidence to suggest that Blake was in possession of a firearm despite being prohibited from doing so.
- The first warrant was supported by an affidavit from a Detroit police officer assigned to the Gang Intelligence Unit investigating "weapon related offenses conducted by known individuals." (*See* ECF No. 206-2, PageID.1256–1258.) The affiant was monitoring Blake's Instagram page—#1125babytez—and saw that Blake had posted a photo of what appeared to be a Glock semi-automatic handgun. (*Id.*) The photo was included in the affidavit along with the affiant's explanation that the photo showed how the slide was locked to the rear and that pills covered both the ejection port of the gun and the place where the serial number would be. (*Id.*) The affiant concluded from this image that the Glock was a functional firearm, and that Blake was trying to avoid it being identified as such because he had a prior felony conviction. (*Id.*)
- The warrants also describe a nexus between the crime and the place being searched—the photo indicating illegal gun possession was posted on the public portion of Blake's Instagram account, and the affiant believed the private parts of the account, including Blake's posts, messages, and location, would reveal more information about the illegal possession of a firearm and aid in locating Blake.

- On these facts, this "is not a case in which a 'simple glance' at the warrant[s] would reveal deficiencies glaring enough to make reliance on [them] unreasonable." *Castro*, 881 F.3d at 966 (citing *United States v. Watson*, 498 F.3d 429, 432 (6th Cir. 2007)). Nor are the warrants "so lacking in indicia of probable cause as to render official belief in [their] existence entirely unreasonable." *United States v. Watkins*, 179 F.3d 489, 494 (6th Cir. 1999). "All in all, this was not the kind of 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights' that triggers suppression." *Castro*, 881 F.3d at 966 (citing *Davis,* 564 U.S. at 238 (2011)*; see also, United States v. Hines*, 885 F.3d 919, 927 (6th Cir. 2018) (noting that bare-bones affidavits provide "nothing more than a mere guess that contraband or evidence of a crime would be found, either completely devoid of facts to support the affiant's judgment that probable cause exists, or so vague as to be conclusory or meaningless." (internal quotation marks omitted)).
- Additionally, courts have applied the good faith exception to warrants for social media account data in analogous circumstances. *See, e.g., United States v. Mize*, No. 18-74, 2020 WL 5505793, at *5 (S.D. Ohio Sept. 11, 2020) ("[C]ourts across the nation have analyzed the constitutionality of nearly identical Facebook search warrants. Based on this case law, an apparent pattern has emerged: search warrants that ask for an entire copy of a Facebook account, such as the one at issue here, are likely overbroad, but evidence obtained therefrom is still admissible under the *Leon* good-faith exception.") (citing

*United States v. Hamilton*, No. 18-57-10, 2019 WL 4455997, at *4–6 (E.D. Ky. Aug. 30, 2019) (applying good-faith exception to search warrant for ten months of activity on entire Facebook account); *Blake*, 868 F.3d at 974 (finding that good-faith exception applied to Facebook warrant that was likely overbroad).

**Independent Source**

- Lastly, "The exclusionary rule has no application [where] the Government learned of the evidence from an independent source." *Segura v. United States*, 468 U.S. 796, 805 (1984) (citations and quotation marks omitted) (alteration in original); *see also United States v. Flores*, 30 F. Supp. 3d 599, 605 (E.D. Ky. 2014) (citing *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995)); *United States v. Witherspoon*, 467 F. App'x 486, 490 (6th Cir. 2012)
- According to the government, some of the group Instagram chats at issue from on November 14, 2021, and November 15, 2021, were recovered from an uncharged associate's account (Subject Account 1) from the April 7, 2022, search warrant[1], subsequently verified from the August 4, 2022, search warrant.
- If the government obtained these group chats at issue during a search of a Facebook account not at issue here—i.e., from a non-defendant—it would also

[1]Given Roman Turner's August 16, 2021, felony conviction and the affidavit's inclusion of an October 2021 photograph of Roman Turner holding a firearm, there is a stronger showing of probable cause as to him. (ECF No. 206-5, PageID.1298–1299.)

not be excludable under the Fourth Amendment. *See United States v. Hamilton*, 2019 U.S. Dist. LEXIS 159077, *21(E.D. Ky. 2019).

Accordingly, for these reasons, and those more fully stated on the record at the hearing, the Court DENIES the motions to suppress (ECF Nos. 205, 207).

IT IS SO ORDERED.

Dated: May 8, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE