UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

    *Plaintiff*,

vs

Case No. 22-20519
Hon. Laurie J. Michelson

**CORTEZ BLAKE, JR.**,

    *Defendant*.

_____

## DEFENDANT'S SENTENCING MEMORANDUM

### Introduction

Mr. Cortez Blake, Jr. is scheduled for sentencing on December 19, 2024. Initially, he was charged in a two-count Indictment as follows: Count 1 - Kidnapping Conspiracy and Count 2 - Kidnapping, Aiding and Abetting. He went to trial. On August 12, 2024, he was found not guilty of Count 1, but guilty of Count 2.

Counsel presents this Sentencing Memorandum in support of a request and a sentence which is "sufficient but not greater than necessary" to accomplish the purposes of sentencing in accordance with 18 U.S.C. § 3553(a), *et. seq*, is a sentence that does not exceed 20 years.

### Background and Context

As acknowledged at the beginning of the trial, Mr. Blake is a member of the 1125 Gang. On November 14, 2021, he was a passenger in a car which was driven by AV-1. This was a rental car. AV-1 did not have the legal ability to obtain a rental car. As a result, she had a friend, Ms. Bryant, rent the car for her. AV-1 had been in

constant contact with Ms. Bryant and was driving the car in the City of Detroit. She stopped at the intersection of Puritan and Holmur Streets. At the time, there was no other traffic at that intersection. However, AV-1 waited for a period of time before beginning to proceed. Prior to proceeding, Jamar Lee-Stinson, Amiaya Bryant and others blocked off the car. AV-1 did nothing to avoid the blockade, i.e., she did not backup or try to go around. Jamar Lee-Stinson, Amiaya Bryant and others jumped out of their car. Mr. Blake got out of the car he was in and fled. While he was running, Jamar Lee-Stinson and other individuals fired at least 40 shot at Mr. Blake attempting to kill him. He was fortunate. These individuals were not proficient in their firing. He was only struck in his buttocks. At the time of the shooting, AV-1 was moving away from the vehicle. Nobody shot at AV-1 and she had been instructed by Ms. Bryant to leave. The car was taken. Though the government contends this was a carjacking, Ms. Bryant was the legal renter of the car. Further, the facts demonstrate, that if it was a carjacking, there would have been no reason to fire 40 shots at Mr. Blake as he fled.

Eventually, Mr. Blake went to Sinai-Grace Hospital with AV-1. In that hospital, he did not cooperate. AV-1 did not remain with him. She left with Mr. Blake's friends. According to AV-1, she was taken to a field and later to Mr. Blake's home against her will. While at those two locations, Mr. Blake was still at Sinai-Grace Hospital. He did not have a phone. While AV-1 remained at Mr. Blake's home, Mr. Blake's father came and retrieved Mr. Blake's phone and brought it to him at the hospital.

A period of time elapsed and Mr. Blake was brought back to his home by his father. According to testimony of AV-1, he struck her with a crutch when he arrived

at his home and told others to take her in an attempt to locate the individuals that shot him. She and others complied with that directive. AV-1 was then released.

## Guidelines

The Probation Department has concluded that based upon a total offense level of 36 and a criminal history category of V, the imprisonment range applicable to Mr. Blake is 292 months to 365 months, i.e., 24 to 30 years. *See*, ECF No. 378, PageID.4292 at ¶ 106.

## Section § 3553 factors; request for downward variance

This Court is thoroughly familiar with the factors it is to consider in sentencing Mr. Blake. In accordance with 18 U.S.C. § 3553(a), the directive is that the Court must impose a "sentence sufficient, but not greater than necessary" to accomplish the objectives of sentencing. *See, Gall v. United States*, 552 U.S. 38 (2007).

"A sentence is substantively unreasonable is a sentence which is too long . . . " *See, United States v. Rayyan,* 885 F.3d 436, 442 (6th Cir. 2018). A sentence is too long, when it is "greater than necessary" to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)(2). *See, United States v. Lee*, 974 F.3d 670 (2020) at 676.

## The nature and circumstances of the offense and the history and characteristics of the defendant

Mr. Blake is 23 years old. His conviction for Kidnapping, Aiding and Abetting is serious. He knows that. He is also a member of the 1125 Gang. The correct question is, how and why is he a member, and what was the journey that he traveled to end up this way. A review of the Presentence Investigation Report tells you.

Mr. Blake grew up in an environment that subjected him to neglect, physical and emotional abuse, and a lack of parental supervision. His parents were not married. His father was in and out of prison. He had been convicted of Armed Robbery and Carjacking. To this day, Mr. Blake has no knowledge of the whereabouts of his mother.

Mr. Blake's residence was not stable. There was a lack of clothing, food and money. He was forced to live with family members who had mental illnesses and abused alcohol and drugs.

The lack of a strong family structure, resulted in no support and guidance. Mr. Blake had to take care of himself. At the age of 11 or 12, he was "in the streets." He did what most young people do when they are "in the streets," they become associated with other people in the streets for their own protection and survival. Mr. Blake had been prescribed Adderall, Ritalin and Seroquel. He also had a prior admission to Henry Ford Hospital as a result of him cutting himself.

The Probation Department administered the Adverse Childhood Experiences which is a prognosis for negative behavior. Mr. Blake scored ten out of ten, the highest score one can achieve. This is of no surprise. He had run away from the homes of his mother and his father. He was the victim of sexual abuse. At the age of 15, he was involved in a fight with his older cousin. His father stood by and watched. It resulted in Mr. Blake suffering strikes to his body, bruises and scratches. Child Protective Services became involved. They cited his father for failure to protect. They also cited his father for attempting to kick Mr. Blake out of the so-called family home.

His father, Mr. Blake, Sr. himself, was involved in a physical altercation with his girlfriend who ended up dying.

Hand in hand with young people who are subjected to abuse and neglect, are the use of drugs. Drugs are used to ease emotional pain while these young people self-medicate. Mr. Blake began the use of marijuana at the age of 14 until his arrest. He used Adderall and Percocet daily.

There is a saying, "it takes a village" to raise a child. As applied to Cortez Blake, he had little if any direction from traditional sources. His parents were not married. There was no family unit. They were abusive. They were neglectful. Mr. Blake never experienced anything positive. They showed Mr. Blake that one must do anything he can to survive. That is why Mr. Blake stands before this Court.

**To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

Mr. Blake has never suffered the consequences of a lengthy sentence. A sentence of no more than 20 years, is a severe and lengthy sentence. It requires Mr. Blake to lose his freedom for two decades. He will lose his freedom for a period of time of what some would say is the best time of their life. Moreover, this Court can impose a period of supervised release of not more than five years. Should this Court be inclined to impose a period of five years, then Mr. Blake is subjected to the jurisdiction of this Court for approximately 25 years. After 25 years, Mr. Blake will be 48 years old. Should he violate supervised release, he certainly would once again lose his freedom. He understands that. This is sufficient to reflect the seriousness of the offense, promote respect for the law and to provide just punishment.

**To afford adequate deterrence to criminal conduct**

The sentence requested also fulfills this objective. Deterrence is generally viewed as what impact the imposition of a sentence would have on others. It also deals with certainty of punishment. A sentence of no more than 20 years, coupled with a period of supervised release achieves that objective just as much as a guideline sentence would.

**To protect the public from further crimes of defendant**

Obviously when Mr. Blake is taken out of the community, the public is protected. It is a substantial sentence. Mr. Blake realizes that he is now at the end of his road at the age of 23. He is well aware that whatever sentence this Court does impose, should he once again violate, most likely will result in him serving out the remainder of a life behind the walls. This sentence achieves that objective.

**To provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner**

Mr. Blake needs a high school education. He understands that and he wants that. He also needs vocational training. He needs to be able to support himself in a lawful manner once released. He also requires mental health treatment to deal with the trauma he has suffered in his young life. He needs and he wants to understand how he became who he is. He wants to change his behavior. He understands he must to do so in order for him not to remain behind the walls, nor be a recidivist.

**The kinds of sentences of available**

Mr. Blake understands his only option is prison. The question is how long.

**The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct**

It appears from a review of the Presentence Investigation Report, the average length of sentence imposed is approximately 96 months.  Those individuals may have records which are different than Mr. Blake.  The most interesting fact is those are the individuals that tried to kill Mr. Blake and failed.  They failed not because they did not intend to kill him.  They failed because they were not good shots.  Those individuals received sentences of 11 ¾ years and 10 years, i.e., Jamar Lee-Stinson and Amiaya Bryant, respectfully.  Those sentences are much lower than the sentence requested by Mr. Blake.

**The need to provide restitution to any victims of the offense**

AV-1 contends when she was carjacked.  As a result of the carjacking, she lost two bags of clothes, her purse with $500.00 in it and personal information.  Mr. Blake should not be assessed the restitution for these items.  It was not Mr. Blake that supposedly carjacked her.  Those individuals are Jamar Lee-Stinson and Amiaya Bryant.

**Conclusion**

It is the government's position that this was an attempted carjacking.  Defense counsel clearly disagrees with that analysis.  The carjacking was over once they had possession of the car.  It was not necessary for Jamar Lee-Stinson and the other occupants to shoot 40 times at Mr. Blake.  As described, one of the responding officer's stated it clearly showed an intent to kill.  Otherwise, why would you shoot 40 times an individual that is running away from you.

In light of all of the circumstances, Mr. Blake respectfully requests an appropriate sentence, is a sentence of no more than 20 years.

                Respectfully submitted,

/s/Jerome Sabbota
RIBITWER & SABBOTA, LLP
26862 Woodward Avenue, Unit 200
Royal Oak, Michigan 48067
(248) 543-8000
contact@ribitwersabbota.com
P25892

DATED: December 12, 2024

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification of such filing to the Assistant United States Attorney.

                                  /s/ Jerome Sabbota
                                  Jerome Sabbota
                                  contact@ribitwersabbota.com