UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,         Case No. 22-CR-20519

-vs-

                                  Hon. Laurie J. Michelson

CORTEZ BLAKE,

           Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

**Factual and Procedural Background**

Over the course of eight hours, V-1 endured astounding acts of violence. First, she was carjacked at gunpoint. On November 14, 2021, she and Cortez Blake were riding in a Kia Soul. While at a stop sign, Amiaya Bryant, Jamar Lee-Stinson, and other armed assailants surrounded V-1's rental car. V-1 and Blake were physically pulled out of the vehicle. Four gunmen started firing as V-1 and Blake ran in opposite directions. Blake was struck by one of the bullets. Though frightened and frantic, V-1 composed herself and she started looking for Blake. V-1 found him leaning against a pole with a gunshot wound.

1

Blake, an 1125 gang member, called other gang members who came to the scene. Those men picked up V-1 and Blake and drove him to the emergency room. V-1 escorted Blake inside the hospital and medical personnel attended to Blake's injuries. V-1 was traumatized, and she just wanted to go home. Blake's friends offered to drive V-1 to her residence. V-1 accepted their invitation since she had no car and no purse. But the men had sinister intentions.

     1125 gang members drove V-1 to an abandoned lot. More men arrived and 1125 gang members started to question V-1 about what happened to Cortez Blake. They confiscated her cell phone and went through it looking for text messages. One man was armed with an assault rifle. He forced V-1 out of the Jeep, hit her and pushed her to the ground. V-1 was struck repeatedly while being questioned about the carjacking and shooting. V-1 urinated on herself. She told the group everything she knew – that she was not involved and did not set Blake up, but they continued to hit her. V-1 had no weapons, and she was by herself. V-1 was crying and deathly afraid because she was surrounded by so many angry men. V-1 was ordered back into the Jeep. She quickly

2

complied given her small frame, the violence directed towards her, and the presence of so many guns.

V-1 was transported to Cortez Blake's house. Approximately fifteen men came to Blake's home. V-1 was forced to sit in the living room and a bedroom. Men pointed guns at her as she was interrogated about the carjacking and shooting. During the interrogation, one of the men announced that women were coming to the house to beat V-1. Maijah Greene was among the group of women who came to Blake's home to assault V-1. Greene's group also brought a child to the scene. Maijah Greene and Shatonnia Kimbrough interrogated V-1. Then they both jumped V-1. Greene and Kimbrough kicked, punched, and stomped V-1 as V-1 was balled up on the ground. Kimbrough also hit V-1 with a bottle of hot sauce. V-1's hair was pulled from her head, her nails were broken, and she was left bruised and bloodied. V-1 had injuries on her head, hands, back, and face. Several men watched as Greene and Kimbrough physically assaulted V-1. A minor child even recorded it on a cellular phone. Cortez Blake arrived later and he joined in the beating by hitting V-1 with his crutches. V-1 was jumped approximately four times while she was held against her will for several hours. After the

final beating, Cortez Blake told Greene and Kimbrough to put V-1 in their car. Greene complied and V-1 was forced into the vehicle. Greene and Kimbrough ordered V-1 to show them where Amiaya Bryant lived. V-1 complied and directed Maijah Green, who was driving, to Bryant's home. The women wrote down the address and then drove to the east side of Detroit. Greene returned V-1's cell phone and she forced V-1 out of the car around 1:30 am -- in a distressed neighborhood. V-1 called her mother. V-1 went to the doctor for treatment following the savage beating administered by Greene, Kimbrough, and Blake. She also reported this assault to the police. V-1 was held from approximately 5:00 p.m. on November 14, 2021 and she was dumped on the east side at roughly 1:30 a.m. on November 15, 2021.

On October 12, 2022 and April 26, 2023[1], Defendant Cortez Blake and six others were indicted for kidnapping V-1. On August 12, 2024, a jury returned a guilty verdict against Blake for Kidnapping – aiding and abetting (Count Two). Sentencing is currently set for December 19, 2024.

---

[1] On April 26, 2023, a first superseding indictment was filed adding Nasir Lewis as a defendant.

## **Sentencing Guideline Calculations**

The Probation Department computed a guideline range of 292 to 365 months based upon a total offense level of 36 and a criminal history of V. *See PSR ¶106*. Accordingly, the government requests a sentence of 315 months followed by a five-year term of supervised release.

## **Argument**

As this Court is well-aware, the United States Sentencing Guidelines are advisory. *See United States v. Booker*, 543 U.S. 220, 234 (2005). In determining a sentence, the district court must consider both the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 51 (2007). Under this framework, an appropriate sentence is one that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant, and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2)(A-D); *Booker*, 543 U.S. at 261-62. Specific factors relevant to the sentencing analysis include the nature and circumstances of the offense and the need to avoid

unwarranted sentencing disparities. *18 U.S.C. § 3553(a)(1-7)*. More, while no presumption of reasonableness attaches to a Guideline sentence, *United States v. Rita*, 551 U.S. 338, 350 (2007), the district court still must consider the sentencing Guideline range. 18 U.S.C. § 3553(a)(4). In particular, the court may conclude that a Guideline sentence is a "rough approximation" of a sentence that would achieve the objectives of 18 U.S.C. § 3553(a). *Rita*, 551 U.S. at 350. For the reasons set forth below, a mid-guideline sentence of 315 months imprisonment is sufficient but not greater than necessary.

**1. Nature and Circumstances of the Offense**

In determining Cortez Blake's sentence, the district court must consider the "nature and circumstances" of this offense. 18 U.S.C. § 3553(a)(1). Generally, the more egregious the offense the more severe punishment the court should impose. *See* 18 U.S.C. § 3553(a)(2)(A) (the sentence imposed should reflect the seriousness of the offense). Blake participated in the cruel kidnapping of a teenage girl – a young lady he had known since childhood. He knew that firearms were being used as he interrogated her, and he knew that she was being beaten and held captive. Despite the familial-type relationship Blake had with V-1, he

6

did absolutely nothing to help her. He even joined in on her abuse. Blake then directed Greene and Kimbrough to put V-1 in their car. Before V-1's release, Blake instructed Greene and Kimbrough to beat V-1 once more. To be sure, Cortez Blake engaged in depraved, anti-social behavior throughout V-1's captivity. Simply put, the nature and circumstances of the offense are shocking and appalling.

**2. History and Characteristics of the Defendant**

Cortez Blake is 23 years old and deeply troubled. He was 20 years old when he committed this kidnapping. Blake tormented and unfairly punished a young woman he has known for more than a decade. But his pattern of abuse did not start that evening. Blake has been intimidating and attacking women for years. On February 12, 2018, the Defendant's mother called the police while hiding in a car with her children. Blake destroyed the family home because no one bought him a birthday present. (*PSR ¶41*). On February 23, 2018, Warren Police Officers returned to the home after Blake damaged a wall, closet doors, and a bedroom door. *Id.* That same year, Blake caused a disturbance at school which left a female teacher "shaking and crying." (*PSR ¶43*). In 2019, Blake hit his child's mother in the face with a cell phone. Then he

7

pushed her to the ground. (*PSR ¶45*). On January 31, 2020, the Clinton Township Police Department were dispatched for another domestic incident between Blake and his son's mother. (*PSR ¶46*). On November 9, 2021 (less than one week before the kidnapping), Blake fired several shots towards his child's mother during a dispute over her cell phone. *(PSR ¶45)*. On March 11, 2022, a probation violation warrant was issued against Blake after he assaulted her again. Blake was arrested three days later, inside a home where an 1125 chain and two guns were found. (*PSR ¶47*). Blake has been found with or around guns many times. On September 10, 2019, Blake was in a car where a .25 caliber pistol, numerous credit cards, and a credit card scanner were located. (*PSR ¶44*). On December 21, 2020, Blake discarded a 9mm handgun while running from the police. (*PSR ¶47*). On March 26, 2021, Blake was arrested by the Westland Police Department and multiple firearms were located at the scene. (*PSR ¶45*).

Blake has engaged in an uninterrupted pattern of criminal activity involving kidnapping, domestic violence, malicious destruction of property, home invasion (*PSR ¶41*), weapons possession, larceny, and credit card fraud. Since the age of 14, he has been arrested more than

8

twenty times. He has multiple convictions which resulted in his placement in criminal history category V. Blake has considerable anger issues and he lacks impulse control. He has violated probation many times and his adjustment to supervision has been poor. (*PSR ¶45*). Blake's defiant behavior persists even when he is behind bars. While incarcerated, Blake incurred misconducts for disobeying orders and interference with the administration of rules. *Id*. Blake's disciplinary record has been just as deplorable during his federal detention. Blake has been cited for fighting, damaging a tablet, misusing a cell phone, stealing another inmate's telephone PIN code, and failure to obey orders. (*Livingston County Jail Disciplinary Records, dated February 2023 through November 2024*). Sadly, Blake is completely out of control. Thus, a significant sentence is necessary to protect the community from Blake.

### 3. Providing Blake with Needed Educational or Vocational Training, or other Correctional Treatment.

Cortez Blake had no respect for Victim 1 on November 14, 2021, and, similarly, he has had no respect for the law (or women) for most of his life. His crime in this case should carry significant punishment so that he, and others, are deterred from such dangerous retaliatory

9

conduct in the future. He needs a dramatic shift in his maturity and commitment to leading a non-violent life.

In determining the sentence, the United States asks the Court to consider the impact of Cortez Blake's criminal conduct on society. He is extremely dangerous. He associates himself with other dangerous people. And he participated in a crime that involved at least 15 men against 1 girl. Notwithstanding his age, Blake's future is clear: either he controls his behavior, or he will serve time in prison for the rest of his life. Or worse, he will end up dead. Hopefully such a reality will deter him from future criminal behavior.

A sentence of 315 months imprisonment involves is a significant amount of prison time and is justified in this case. The sentence should promote respect for the law, and for a period of time society will be protected from Blake's destructive behavior and violent friendships. He will still be in his 40s when he is released from federal prison, and hopefully with older age and time in prison he will contemplate what his life will be like moving forward. Taken together, Blake's history and the facts in this case show a complete lack of respect for the law. Without corresponding punishment, he will remain extremely likely to

reoffend. But any shorter prison term would not serve the purposes and principles of federal sentencing. Instead, it would only accelerate the time in which Blake is returned to the community and reduce the amount of time for programming and rehabilitation with the Bureau of Prisons. During his time in prison, the government hopes Blake will avail himself to vocational training, complete his GED, attend cognitive behavioral therapy, receive mental health treatment (*PSR ¶81-90*), and address his substance abuse issues (*PSR ¶¶ 92-95*).

## Conclusion

Given the serious nature of this case and Cortez Blake's complete lack of respect for the law, and the need for specific and general deterrence, a mid-guideline sentence of 315 months imprisonment is sufficient, but not greater than necessary to comply with the purposes of sentencing under 18 U.S.C. § 3553(a).

WHEREFORE, the United States respectfully requests that this Court sentence Cortez Blake to a term of imprisonment of 315 months followed by 5 years of supervised release.

        Respectfully submitted,

        DAWN N. ISON
        United States Attorney

        *s/Jeanine Brunson*
        Jeanine Brunson
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, Michigan 48226
        (313) 226-9597
        jeanine.brunson@usdoj.gov

Dated: December 12, 2024

CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record for Defendant.

*s/Jeanine Brunson*
Jeanine Brunson
Assistant United States Attorney
